IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

SPEECH FIRST, INC.,

          *Plaintiff,*

v.

TIMONY L. KILLEEN, et al. ,

          *Defendants.*

Case No. 19-cv-3142

## DECLARATION OF NICOLE NEILY

1. I am the President of Speech First, Inc.

2. Speech First is a nationwide membership organization of students, alumni, and others that is dedicated to preserving civil rights secured by law, including the freedom of speech guaranteed by the First Amendment to the U.S. Constitution. In particular, Speech First seeks to protect the rights of students and others at colleges and universities, through litigation and other lawful means.

3. Speech First has a number of members who are current students at the University of Illinois at Urbana-Champaign.

4. I am personally familiar with several of Speech First's members at the University, including the students discussed in the Complaint (Student A, Student B, Student C, and Student D).

5. Speech First's members at the University range in age from rising sophomores to recent graduates.

6. Speech First's members hold a wide array of different views and opinions on matters such as politics, race, religion, gender identity, abortion, gun rights, immigration, foreign affairs, and countless other sensitive and controversial topics.

7. Speech First's members at the University want to be able to have open and robust intellectual debates and discussions about these issues in their dormitories, on campus, online, and in the City of Champaign-Urbana.

8. As detailed in the complaint, Student A, Student B, Student C, and Student D want to engage in expression that has been and can be reported, investigated, and punished as a "bias-motivated incident."

9. For example, Student A and Student C want to advocate for stronger immigration policies, including building a wall along the U.S. southern border. Student B wants to advocate for policies that would lead to the "deradicalization of Islam." And Student D wants to voice confusion and ask questions about LGBT issues he does not understand. These categories of speech all have been the subject of complaints and investigations by the BART.

10. Speech First's members are aware of the University's ban on "bias-motivated incidents." They credibly fear that expressing their views could result in being reported, investigated, and punished by the BART for engaging in a "bias-motivated incident."

11. Through my discussion with Speech First members and other students who attend and have attended the University, I am aware of how the BART operates.

12. When a BART official contacts the offender, the official tells the student that the BART has received a bias report about the student and that the BART needs to speak with the student to discuss the allegations. The BART official will not identify the person who has accused the student of "bias" or inform the student of any rights he or she may have.

2

13. In addition, if the BART determines the identity of the student who committed the "bias," it will record the details of the incident on the student's permanent record. The BART will make this information available to others outside of the BART.

14. For example, one Speech First member at the University was accused of "bias" after engaging in speech in support of Israel. When the student met with his academic advisor later that semester, the advisor told him that he could see from the student's files that the student had met with someone from the BART. The advisor commented that the student had not been "behaving" that semester.

15. The only way for Speech First's members to have certainty that they will not be investigated or punished by the BART is to engage in self-censorship by avoiding any subjects that could possibly be interpreted as motivated by "bias."

16. Speech First's members also are aware that the University has imposed No Contact Directives on students for engaging in protected speech and understand that violating a No Contact Directive can lead to severe penalties, including expulsion from the University. Speech First's members credibly fear that expressing their views could result in a No Contact Directive.

17. The ban on "bias-motivated incidents" and the policy of issuing No Contact Directives for engaging in protected speech chill Speech First's members' speech and deter them from speaking openly about issues of public concern.

18. Speech First's members also want to distribute literature about non-campus elections. For example, Student A, Student B, and Student C want to distribute literature supportive of President Trump's reelection. Speech First's members are aware that the University prohibits them from doing so without first securing approval and that they can be severely punished for violating this prohibition on political speech. Speech First's members credibly fear that distributing literature about non-campus elections without prior authorization could result in punishment.

3

19.  The University's ban on political speech chills Speech First's members' speech and deters them from distributing literature about non-campus elections. Speech First's members are forced to engage in self-censorship because of their unwillingness to seek permission to engage in protected speech.

20.  Speech First has brought this suit to ensure that its members and other students at the University will not face investigations or discipline for engaging in the open and vigorous exchange of ideas that is at the core of the First Amendment.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on June 6, 2019.

Nicole Neily
President, Speech First, Inc.

4